Your Honor, the second case on the docket this morning is 2-22-0170 Silverthorne Development Company Defendant Appellant v. Board of Education of Sycamore Community School District Number 427, plaintiff, Atherley. Caringly, on behalf of the appellant, Mr. C. Nicholas Cronow. Caringly, on behalf of Atherley, Mr. Matthew J. Gardner. Caringly, on behalf of the appellant, Mr. Matthew J. Gardner. Mr. Cronow, you may proceed. Thank you. Thank you. May it please the Court, Mr. Gardner. As you know, I'm Nicholas Cronow. I represent the appellant defendant in this case, Silverthorne. Basically, I was going to give you a brief road map.  But the issues are simple. Basically, should a bedroom be anchored to anything related to life safety? That's the main issue. Hold on, Mr. Cronow. This is being recorded, and I'm not hearing everything. And you want it to be heard. Thank you. Here we go. All right. Thank you for that. Basically, this is a simple case. There's two big issues. Should a bedroom definition be anchored to the building code? That's the main issue. And the second issue are the issues or facts that relates to the restitution claim, I call it, where it deals with the impact fees and being deposited in the operating account. Now, before I begin, are there any questions? No. We have an understanding of the background. Let's get to the law. Sure. Counsel, I'd like to just start with, what is a bedroom? That, Justice, is a great question. And that is why there's issues of fact in this case, because there's three different definitions of a bedroom. So you apply the appraiser definition, which only looks to closets, the MLS definition, which piggybacks off the appraiser definition. There's the ordinance definition, which just says, designed or intended to be used for sleeping purposes. There's a dictionary definition, which is anchored to sleeping. And you have the building code, which specifically sets out the criteria for a sleeping room. Let me ask you this. When you decided to apply for and pay fees based on two bedrooms, what did you have in mind? It was the building code, because that is what the permit looks to, to determine whether or not a room is a bedroom, as defined by the building code for safety purposes, because it has the life safety criteria in that. So if a two-bedroom home that was sold as a two-bedroom home or at least listed as a two-bedroom home and impact fees were paid for a two-bedroom home, later became a three-bedroom or beyond, were additional, in addition to a closet or an armoire, were additional smoke detectors placed in those areas and carbon monoxide, were they all placed in those rooms? So to answer your question, the armoire and the closet have no bearing on permitting or a sleeping room. I understand that, but there was some reference, I believe, in the brief in the record that a closet was put in after the walkthrough. Correct. Okay. After the fees were paid. Correct, because the fees are paid before construction starts. You can't start until the fees are paid. So if it went to a three-bedroom or a three-sleeping room house, I guess, were more safety equipment added? Yes, in order to make a sleeping room, the safety equipment has to be added. After everything was already wired? Correct. So then if you add a closet and you add all the safety requirements, you're conceding that it's a sleeping room now? Yes, if the safety requirements are there. But the closet, absolutely not. The closet has nothing to do with a sleeping room. But everything else, if it's a quote-unquote sleeping room, then it's a bedroom. Correct. And so did he pay the fees? Yes, and this is John Sautner's testimony. Every home was certified and complied with the building code and the ordinances. Every home met the permit requirements, the sleeping safety requirements at the beginning and the end. There's one home that Mr. Work agreed that they changed the room based on the customer's request, went to the city, went to the school district, and said, hey, we changed this room. What do I have to do to pay you? And they said, I don't know. So what did they do to pay on all the other ones that they changed the room? There was nothing paid. I mean, that's what this lawsuit was about. Nothing's been paid on anything that's been changed. I asked you that before, and you said yes, that it was taken care of. My question is, when you added a closet and or added the things outside, the smoke detector, et cetera, et cetera, did you pay the fee to make it from a two-bedroom to a three or four? In all the others other than the one that they acknowledged, they called and somebody said, I don't know what to do. So in all the others, did they pay? No other home has there been any evidence or testimony that any changes were made. There's the one issue with the closet. There's the one home that Mr. Work agreed they tried to change. Otherwise, there's nothing in the record that any of these rooms were changed or had life safety features added after the fact. Well, they're asking for $66,000 somewhat, 66,649 in lost impact fees. That's not from one home. No, that's from multiple homes. Correct. Based on the NLS listing of a bedroom, which has nothing to do with the building code. Based on the NLS, then based on what happened after. No, there's no evidence of any changes occurring after in this case as it relates to building code life safety. I know, but they were permitted initially as two-bedroom facilities. Some, not all. All right, but some in question were. Correct. There was also one that was permitted as, I think, a four-bedroom house, but then they decided the husband's daughter would come and live with them, too. And that became then a, there were five sleeping rooms. Did anything get added to that fifth room to make it safe? That's, not that I'm aware of, because that was a decision made by the customer during this deposition. Okay, but it became a five-bedroom home. I mean, I hate using sleeping room, bedroom, I'm using them interchangeably. I know they're not defined the same way, but we're, I mean, they wanted five bedrooms. They thought they wanted four, now they wanted five. Correct. And so to create that fifth bedroom, nothing had to be done by the developer? Not after the house has been sold and they've moved in. I mean, once that house gets sold to the customer, what they do with the bedrooms are proactive. And my client can't police that and doesn't police that. But what were the occasions when something was done by Silverthorne before, after, rather, after the walkthrough by the city? There's only, the only thing in the record of any changes occurring that would warrant life safety changes for a bedroom is the one time that my client admitted under oath that they tried to make a change and the city told them, I don't know what to do, talk to the school district, talk to the school district, they said talk to the city. It's the only time he agreed there's been a change. Which house was that? I don't have that written down. I apologize. The closet issue is, you know, why this all started, it's a non-issue because under the building code, closets don't matter. It's not a life safety issue. But why would, why would the Silverthorne put in the closet after the walkthrough? Because from an MLS perspective, the MLS won't count it as a bedroom for MLS purposes without a closet. So if a room doesn't have a closet, and if any of you are in real estate, you cannot list that room as a bedroom. So then when they go to sell it on the open market, the bedroom would be three, the other room's a bonus room it's called. But that's still getting around the impact fees, isn't it? No, it is not because, what's the foundation for an impact fee, right? An impact fee is not a tax. That's a very important distinction that, you know, you always have to make. Impact fee derives from the police power of the state for life safety. Impact fees have to be uniquely attributable to new development. It has to be proportional. If the standard is just any room that has a closet gets an impact fee, that converts the proportionality from a police power to a tax, and that's unlawful. So you have to have some type of objective. Well, what's the whole, what's the whole intent behind an impact fee? The intent behind an impact fee is public safety in that it puts... Public safety? How about education? But that goes back to increasing the capital for the town and putting the cost on the people moving to the town, which is, if you look into the heart of impact fees, the power comes from public safety. Okay, but the realtor in, I believe, her deposition, and she was the realtor who worked for this developer for some time, said that she had never sold a two-bedroom house. She never advertised or sold? Never listed. Listed, okay. And I guess respectfully from her perspective, I don't know what she is or is not selling has no bearing or relevance in what Silverthorne is or can sell. In Sycamore today, there's plus, very hot homes are plus 55 communities, believe it or not, in Sycamore. There's three developments, and those have nothing to do with kids, but they still pay impact fees. So I think they claim that she's never sold two bedrooms. There's no bearing on whether or not the houses were permitted properly. All received certificates of occupancy, which state they've been inspected. They've been inspected 12 to 15 times and meet all codes and ordinances. That's what matters, not the realtor saying, well, I've never sold a two-bedroom house. And if you have the amount of realtors jaded towards Mr. Miller... Well, he doesn't have, Silverthorne doesn't have a lot of empty two-bedroom houses out there, does it? When you say empty, what do you mean? That didn't get sold? I mean, with real estate right now, I think houses are selling left and right. So who sold those homes if she was the exclusive listing agent? I don't... Or... She was a prior listing agent. I mean, I don't believe she testified that she sold any specific house. That's an issue in this case because of the falling out they had in Cortland. She just had sold houses previously for Mr. Work. Are there 24 houses involved here? Sounds about right. I mean, is there an inkling that there might be more? Or is this, we're limiting here to 24? As far as I know, we're starting 2015. These are the only cases, the only houses they've identified. They haven't moved them into complaints. They're the only houses I'm aware of. But those houses, according to the district, are different than the impact fee that was paid for them. I mean, that's what they're claiming, but there's nothing in the record to support that. They don't inspect the houses. They don't determine what's a bedroom. They don't determine permitting. They were heard through, you know, it's like the game of telephone, heard through the grapevine that a closet was being added. And to most people, especially realtors, they think, oh, if a closet's being added, that's a bedroom. But once you get in the case, you realize there's way more to this than just is a closet being added. And that's where the school district's at. I deposed Ms. Stuckert, you know, the corporate rep. She had no idea what a, how the ordinance defined a bedroom. And she deferred to the city as far as what they did do, how they do it, and what they do. And if you look at the UDL, the zoning administrator is responsible for policing this. Again, police power, policing this. The zoning administrator was deposed. So there's no fraud, so that it's confusing. They've tried to come up with a more workable definition. I don't know why, when they have the building code, that they could easily just say, see building code for what qualifies as a bedroom. And then we get, we can avoid all these issues with, you know, hearsay, people saying, well, here's a closet, therefore he's getting all the impact fees. That has no bearing on impact fees. And if you look at the Brighton house, you know, the big issue I raise in that is the trial court found that was a four-bedroom house. It's a married couple with no kids. So arguably it could be a two-bedroom house, which is how it was permitted, a two-bedroom house, not a one-bedroom house. But you cannot logically or factually find that it's a four-bedroom house when only two people are living there. Oh, that's silly. But did they? That is silly. How many people have two, three, four, five, six-bedroom homes and it's only a husband and a wife? So you're going to say the fact that there's only two people living there and it's listed or it shows four bedrooms, that it's only a two-bedroom house because only two people sleep? In one bedroom? From an impact fee perspective, yes. That's not how they look at impact fees. I mean, I wish that's the way they looked at impact fees. All of our taxes would be much different, wouldn't it? If we didn't have to pay for a school system if we have no kids in the school. But if impact fees look at the rooms that are actually slept in. No. I disagree with you. I disagree with you. If in that house with the two people and the four bedrooms, did those other two bedrooms have the safety features in them? They did not. They did not. And John saw this clearly. Every house that was permitted for two or three bedrooms at the end of every inspection, the plans met the blueprints and had the life safety equipment. Those houses are going to be resold. And they may be resold to a person who has six kids who's going to fit them in two extra bedrooms. Where are those kids going to go to school if they don't have the fees in order to get them in a classroom? Respectfully, that's not the standard for when an impact fee is paid. I mean, you're not... It's by bedroom. By sleeping room. By whatever it's called. Rooms that can actually be slept in. They can be slept in. Legally. Not that are rooms slept in. Right? Correct. Which is why the life safety equipment is the key. Because if the life safety equipment is there, they can be slept in. If it's not there, they cannot be slept in. So to answer your question, if a family moves in in ten years and has eight kids, I mean, they would have to go in and make changes to that house. Not necessarily. They could put the kids in those two rooms or three rooms because the husband and wife are only sleeping in one. But the impact fees look at the people per room. It looks at sleeping rooms. But once it's sold later, impact fees are no longer an issue. Correct. You can wire that house with the extra safety features without having any input by the district. Correct. But that's an issue between the district and that family. It's not an issue between the district and my client. The... I think that the allegation is here, and I don't think I need to school you on this because I think you're perfectly... You understand perfectly what is being said here. Is that your client is trying to avoid the impact fees and therefore he didn't say it was a three-bedroom when in fact it was a three-bedroom. He asked for a permit for a two-bedroom that was listed as a three-bedroom. So then who doesn't have to pay the fee? Your client. It's not that he's going to say, I'm done with this. What those people do with it afterwards, that's up to them. I mean, I don't think... I think you're insulting our intelligence by first saying if it's a six-bedroom and only somebody sleeping in one, those aren't bedrooms. I think you've come around now and you've acknowledged that that's not correct. But to come in and now say, well, if it's a two-bedroom and somebody three days later comes in and puts a closet and they buy it, and what's the school going to do? Walk around and see who's adding things to the house? I mean, you have to get a permit only if you're changing electric or you're changing plumbing. Hutchinson said if you're adding something like a smoke alarm, they're going to know about that? No. So to... I'm not trying to insult anyone here and I apologize if that's how I came across. I think the issue is, you know, what is a developer required to do? What is a developer required to do? A developer required to do? Requiring anyone to permit a home. And if the standard is every house in the room, every room in the house, is subject to an impact fee, the school district could pass, the city could pass that law. But that's not how the law reads. It's a sleeping room. So if every room was what you call a sleeping room, has a closet or doesn't have a closet but has all the safety features, if they buy the home from the builder and that's the way the home is, then he should pay the impact fees on however many bedrooms or sleeping rooms there are, right? So the issue goes back to what's the definition of a bedroom? Which definition of a bedroom are you applying? Well, it should be, I think, the definition that the city is requiring them to permit. If he's trying to sell the Ashberry as a two-bedroom when it actually has three rooms that could be designated, maybe that's what we should call it, could be designated as sleeping rooms, but he's only selling it as a two-bedroom, three bedrooms. And he should pay for three bedrooms. Every room has a potential to be a sleeping room, though, unless it's anchored to the life safety criteria. But you can choose, the developer can choose not to put those in and call this a playroom, whatever they're calling it. But when you list a house, and I'm just looking at the Ashberry here because it opened up for me. It's listed as a traditional bedroom plans, three bedrooms, two bathrooms. That tells me that that should be, the fee for that should be, what, is that the $5,000 one? No, the $3,000 one, I forget. It goes from $897, I know, up higher. But you're telling me that he could go in and say to the city and to the district, by reference, no, that's really only a two-bedroom house. I'm only going to equip two of the bedrooms with safety equipment. And the other room, yeah, they can do whatever they want. Because, yes, because the MLS does not look at safety equipment. It's not, but he's building it for, permitting by the city. It's not what the MLS wants to call it. And that's the issue, right? The city, he built it for the city. And the city said everything that he did met the permits, met the plans, met occupancy, got a certificate. Because he had a receipt for paying for a two-bedroom. That's all it required. No, 12 to 15 inspections. 12 to 15 inspections each one of these houses go through. They have to get certificate of occupancy. They all have a certificate of occupancy that says this house has been inspected and is found to comply with all codes and ordinances. That includes the UDL. So, again, yes, they're building it for the city. If the city approves it, agrees with it, and signs off on it, that should be the standard, not what the school district thinks a bedroom is. But I guess, Counsel, if your client were to build a 12-room house and the prospective customer said I want a smoke detector in every room, would it then be excluding the kitchen, a 11-bedroom home? Well, it depends. Because that room also needs an egress window. Right. They all have windows. Let's assume they all have windows and sporadically around there are CO2 detectors as well. Are they all then bedrooms? If you have to have an objective criteria that meets the building code, then I would say yes. You have to have a definition somewhere. If that's the definition I'm advocating, that would be the definition that should be applied. A 12-room house. Put a smoke detector in one room and then bill this pay impact fees based on a single bedroom. Is that correct? That's correct. Okay. I mean, it comes down to, again, what is the intended use? And if, in your example, it's a super wealthy individual, a man or woman who has no family, no kids, but wants a big house, that impact fee is proper. If it's someone trying to game the system, I mean, that again becomes an issue for the city, the school district, and that home buyer. Well, when he pays that fee, it's before he normally would have a buyer. So he doesn't necessarily, he might be building some models in there and building some homes that somebody could buy and they don't really care. I mean, it's got to, I mean, they've got the kids, but he's, you know, they're buying it, but he's still sold it to the city and to the district as a two-bedroom house. Some are specs. A lot are customer built. I mean, I don't think there's a breakdown of what's what, but if it's a spec home and he permits it as a spec home and sells it, and again meets all the inspections, gets a certificate of occupancy, and a homeowner changes it. He sold it under a different definition. She didn't sell it. No one has testified that these homes, as they were sold, they knew what the UDO said. What the appraiser does, what the MOS does, it's the number of rooms that can hold beds. And as John Sawyer said, a bedroom is independent of a sleeping room. So just because it's listed as a bedroom doesn't mean it's a sleeping room. So because the MOS says this is a bedroom does not mean this is a room that can be slept in. It means it's a room that can house a bed independently. So if he built a spec home, I mean I think that makes it even more innocuous. He built a home, two beds, two sleeping rooms, three bedrooms, and if he sells it as a spec and someone buys it and uses that third room as sleeping, that's not on the developer. That's on the homeowner. Justice Jorgensen, do you have anything else you wanted to add? I do not. Thank you for the opportunity to talk. You took your time with questions. Thank you. And Mr. Gardner. Just one question. Justice Jorgensen, Justice Jorgensen, is there a way to turn your volume down?  Sorry, I apologize if I appear to be yelling. Well you are yelling. How about that? We're working on it. Is that better? Yes. Right there. Okay. And whoever did it, thank you. I don't know if it was you or Jeff, but all right, Mr. Gardner, I think we're ready. Thank you. May it please the Court, Matt Gardner from Robin Shorts, representing Sycamore School District 426. Now you have to pull that up a little bit. I'm sorry, if I'm too loud, let me know. You're too tall for where that was. There. You had some wonderful questions. I can tell you've read the briefs. You're familiar with this. I think, as counsel started, this is a straightforward case. There's a lot of records. There are a lot of facts. There are some side issues, but when you boil it down, there are a lot of things that he's addressing. One, the definition of a bedroom, and also the fourth counterclaim. So going to the definition of a bedroom, I can certainly address it. Is the question of fact what a sleeping purpose or sleeping room means? No, I think that's a question of law. Is it subjective? No. There is a definition. It could be. There needs to be objective evidence or a statutory or ordinance interpretation. It's a question of law. It's straightforward. When interpreting that law, a court's role is to ascertain the intent of the drafters. Here, the City of Sycamore's City Council. The best way to do that, the case law says, is to look at the plain and ordinary meaning of the language. Section 1.33 of the Unified Development Ordinance says, to reclaim language, a bedroom is any room designed, intended, or used principally for sleeping purposes. There is no reason that the court or anyone else in interpreting, whether it be John Saunders or the school district, anyone else needs to refer to a separate ordinance, the building code, and a separate definition, a sleeping room. I'm not into John Saunders' testimony. It's a question of law. Sorry. Counsel, could I interrupt you and ask you this? If we assume that definition is the appropriate way to define what a bedroom is, is it designed, used, and intended to be used for sleeping purposes at the time the fee is paid or at the time the house is completed? I don't think the statute really addresses that. Is that then a question of fact? Well, what I would say to that question is the building permit application that Jim Work from Silverthorne fills out has a certification stating that if anything changes after they fill out that form, they are required to update that form. John Saunders testified about that as such as well. That was never performed by Silverthorne, even on that one home that he mentioned where there was a change. But they weren't structural changes. I think that was part of his response. They weren't structural, so it's okay. Sure. Realistically, I don't think there were many changes. They intentionally misrepresented the homes to get around the contribution fee. The intent is not an issue here, first of all. We do have a claim for fraud, but that's not an issue here today. But they misrepresented the number of bedrooms to get around the contribution fee. As soon as that was done, we have evidence showing that they were marketing these homes for properties. The definition applies. But really, the only time they raise that question of a bedroom is when they are required to pay contribution fees. They have a clear understanding of what a bedroom is when they are marketing these properties and trying to get money. Because obviously marketing a 3-bedroom home is more valuable than paying for properties. The only issue is that in this case, Silverthorne was paying multiple properties for less than. Were any other builders advertising or listing them as 2-bedroom and then changing them and then coming in and paying? I have no evidence of that. I have no record of that. Just to summarize, John Saunders questioned a lot. I don't think his testimony is particularly relevant. But he did say the definition of a bedroom under the Unified Development Ordinance is broader than the definition of the MLS or the definition under the Sleeping Code. Going to that question of whether there was a sofa in the kitchen, I don't think that will qualify as a bedroom for purpose of the Unified Development Ordinance because it was not designed for sleeping purposes. I think the one other thing to add there is it's not just how it's intended or used, which is what Silverthorne is really relying on, Silverthorne's own marketing documents, their own communications and portal documents with the purchasers show that it's designed. I want to get to all the issues since I don't have a bottle. Are there any other questions on this? I have a real quick question. What is the basis for an impact peak? Do you have the facilities in place to accommodate these students? The way the taxing works in Illinois is these homeowners do not pay property taxes until the following year. So the school districts are left for a year where they need to pay for costs to house these students or facilities to educate these students. The school district, as I've described, set forth numerous facts. Testimony from Mr. Work and Mr. Almodavid themselves where they acknowledge certain homes consisted of the bedrooms as alleged in the school district's complaint. The testimony from the real estate documents from Silverthorne itself is making admission that these are three or four bedroom homes. At no time were they distinguishing the different definitions there. Silverthorne failed to produce any evidence indicating that these homes were anything but bedrooms. They don't quote that testimony. If you read Mr. Work's testimony, he's simply distinguishing it based on the definition of the bedroom. The question was asked, would you dispute any affidavit that Mr. Almodavid is claiming that these homes were bedrooms?  Almodavid did not dispute any affidavit that Mr. Almodavid is claiming that these homes were bedrooms. The school district ruled for summary judgment on this set forth specific evidence from Nicole Stuckert who is the chief school business official, the citizen superintendent for Sycamore School District. In that affidavit, Ms. Stuckert stated that these measures were also reflected on the annual contribution fee audit that the school district does. Those were attached to the affidavit. I understand that there's no statutory requirement that there be separate bank accounts for these funds. I'm not an accountant. I will say this is standard practice. As someone who represents schools and works with them on finances, this is standard practice. It's actually governed by ISB regulations. It's not just District 427 doing their own thing. This is an ISB regulated process. Some of these funds are actually statutorily authorized and required. The one accounting that she could not speak to, she said she didn't write that. Was there testimony that even though there was no testimony that Ms. Stuckert from anybody about how these funds were used? There's a conclusory statement from Mr. Grant, the Silverthorne's expert, but there's no evidence otherwise of how these funds were used. Those are not the contribution fees that are at issue here. Those are impact fees from municipal and county governments. We raised this in our response brief. Silverthorne's applied brief claims that plaintiff makes the absurd argument that Ms. Stuckert's   related to the contribution fee ordinance. At no time does she say these are Silverthorne's contribution fees or these are related to the contribution fees through the Unified Development Ordinance. This is during the deposition. That would be impact fees you receive from the City of Sycamore and developers, correct? Correct. It's vague there. Again, this would be at this point Silverthorne's burden to raise affirmative facts against Silverthorne or any developers. Mr. Grant sort of relied on that. Correct. This deposition of Ms. Stuckert was after we filed our motion for summary judgment and we subsequently filed a supplementary motion based on some of this additional evidence. In addition, Ms. Stuckert was able to       are transfer taxes from the City of Sycamore. It doesn't change her deposition at this point. The figures all match up that those are the contribution fees from Silverthorne and other similar developers and that those were deposited into O&M. Again, where it's deposited is really not relevant. The evidence that is at issue is how the funds were transferred. And the  is at issue is the fact that    funds to O&M. The evidence that Mr. Grant was able to transfer funds from O&M to Ed, you need to post seven days notice and have a public hearing. These public bodies, these schools in particular, are all audited. Oftentimes, I'll get an auditor calling me for school saying, hey, your district is trying to make this transfer without going through O&M. So tax revenue that's coming in from the O&M fund, from property taxes, the O&M fund is not solely consistent of these contribution funds. So if there was a transfer, it certainly could have been just some of the property tax revenue which is allowed under law to be transferred to the school. And I know I have it. I just have to put it words. Do we have any activity of building major repairs, new schools going on during this period of time? Are those funds pretty much staying there? Aside from those two expenditures of contribution funds, I'm not aware of any other funds that would be building things, but there's no evidence that that was used through these contribution fees. And there's also some evidence here or some suggestion here that their actual fund for which they pay teachers and things was always running short. Frankly, I don't want to necessarily follow that argument myself. I have a document showing that these funds were kept and used only for these purposes. Ms. Stucker was asked about this. I think she was asked about tax warrants. And she testified that that's a way, even when we are running a deficit, that is a way how we're able to make these payments to general education funds for the benefit of   that's true for all bedrooms. If we assume it's designed, used, intended, etc. for sleeping purposes, did all these bedrooms or would-be bedrooms share common features? And if so, what were those common features? The advertising by Silverthorne, the NLS documents. I got that. My question is what did the rooms have in common that you're saying are now bedrooms? I don't know that. I do know a couple of them certainly have closets that were added. I don't think the closets is relevant at this time. Okay. Thank you. And I have none. Thank you very much, sir. Thank you, Your Honor. Mr. Cronauer, if you have anything to reply, you may do so at this time. Thank you, Your Honor. I'll be brief. Just to pick up where we left off, this relates to the impact fees. He talks about 253,000 impact fees that aren't accounted for, the negative bank balance, which means the bank balance is negative in the one account, the money has been spent. It's literally been spent in one account. The money spent. They say, yes, we're accounting for it in this spreadsheet, but the money has been spent. I want to talk briefly about the second affidavit. First affidavit, she says it goes into operating maintenance. Her deposition, I pin her down, she says it goes in the education fund, two different accounts, and then says, well, that must have been a mistake. Then the second affidavit comes and there's a confusion. The fund for operations and maintenance, what's funding that account? In this case, she told me it's account 1930, county and local taxes. The city doesn't pay impact fees. Developers do. That's going into the education fund. There's only one other fund that could possibly be used. It cannot be used to contradict a deposition testimony, and that's exactly what happened. For that reason, there's an issue of fact. Briefly for the question of fact issue, I think that's a good question because the problem with the affidavits that were supplied is no one in those affidavits said the defendant should be slept in. Without that evidence, there's a question of fact. So if you call it a bedroom, there has to be an intent to have someone sleep in it? Under the code, absolutely. Absolutely. Intent, again, is a question of fact. The definition of fact is that the defendant should sleep in it.      That's the definition of fact. That's the definition of fact. I don't recall... Wait, wait. No, I have it. Yeah, I think... But the issue with that is, again, she is thinking as a real... Yeah, here it is. Oh, Keith Almaday, a former partner in defendant's business, Almaday replied that the city charged more for three bedrooms than it did for two bedrooms. That's totally irrelevant under the standard for... That is irrelevant with respect to the definition, maybe you're splitting hairs there. But there's testimony that a former partner indicated that that was his intent in not adding the closet in the first place and then doing it afterwards because it cost less. So the city didn't show it to him, let him see it, and they didn't get penalized for it because the closet has no bearing under the sleeping purposes. Well, the city isn't going to be concerned about it as long as it's not structural. It's the district that's concerned about it, and the district doesn't care about it. I mean, it's really not structural because a smoke detector is not structural, I guess a window arguably is structural. Putting a closet in a wall, unless it's the wall that's holding up the entire house, is not structural. It's cosmetic almost. But it's being done because somebody wants it. Okay. And just lastly, to answer your question, no builder has ever gone to the city and paid to change the plans because there is no process in place to do that as it's been established. And when we tried, we were told, I don't know what to do. Thank you. Thank you for your apology here, too, because this can be heard by others sometime after tomorrow. So thank you very much. We will take the matter under advisement. There will be a decision issued in due course. We're going to take one last recess.